1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ELLA MAE MICHELE DAIGLE,

          Petitioner,

 v.

WALTER MILLER, Warden,

          Respondent.

_____/

No. C 12-4270 JSW (PR)

**ORDER DENYING PETITION
FOR WRIT OF HABEAS
CORPUS AND CERTIFICATE
OF APPEALABILITY**

### INTRODUCTION

Petitioner, a California prisoner, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  On October 23, 2012, the Court issued an Order for Respondent to show cause why the petition should not be granted.  Doc. no. 4.   On February 13, 2013, Respondent filed an answer to the petition.  Doc. no. 11.  On February 15, 2013, the Court's mail sent to Petitioner was returned as undeliverable.  Doc. no. 12.  Petitioner has not informed the Court of her current address nor has she filed a traverse.  The Court addresses the merits of the petition and, for the reasons set out below, the petition is DENIED.

### BACKGROUND

**I. Procedural Background**

In 2010, a jury in Santa Clara County Superior Court convicted Petitioner of three counts of second-degree robbery.  Based on these convictions and sentencing enhancements, the trial court sentenced Petitioner to a term of eleven years in state prison.  On July 6, 2011, in an unpublished opinion, the California Court of Appeal denied Petitioner's appeal.  On September 14, 2011, the California Supreme Court, without comment, denied Petitioner's petition for review.  Petitioner then filed the instant petition for a writ of habeas corpus.

**II. Factual Background**

The state Court of Appeal set out the facts of Petitioner's offense as follows:[1]

The prosecution's case at trial disclosed the following facts. FN3 A Burger King was robbed near closing time at about 9:30 p.m. on March 23, 2009. No customers were inside the Burger King at the time of the robbery, but a truck was at the "drive-thru" window. Two men wearing gloves and black masks entered the Burger King. Both of the masked robbers had handguns, which they pointed at Burger King employees. The robbers filled a bag with money from a drawer and took an employee's wallet. The robbery lasted about 10 minutes.

FN3 The defense presented no witnesses at trial.

Two witnesses were in the truck at the "drive-thru" window during the robbery. FN4 They could see the robbery taking place. The witnesses saw the two robbers "running" from the Burger King after the robbery. The robbers "tucked" their guns "inside their clothing," but they continued to wear their masks and gloves. One of the robbers was carrying a white bag. The robbers were "running as fast as they could." The two robbers ran directly to a car stopped in a nearby red zone, opened the car's rear door, and got into the car. Defendant, the driver of the car, was in it when the robbers entered the car. The robbers were still wearing their masks and gloves when they entered the car. After the two robbers entered the car, the car's lights went on, and the car drove off.

FN4 Although there were significant distinctions between the accounts given by the two witnesses in their trial testimony, our standard of review requires us to resolve all conflicts in favor of the jury's verdicts. Therefore, we need not detail these distinctions.

One of the witnesses called 911, and they followed the car containing the robbers while the witness talked to the 911 operator. While the witnesses were following the car, one of them saw the robbers remove their masks. The car drove "fast" for about five minutes until it reached an apartment building. At that point, the car slowed down, and one of the robbers "jumped out" of the car. The car made a u-turn, and it subsequently ran a stop light. At the entrance to the freeway, the car slowed down, and the other robber got out of the car and ran into some bushes. The car proceeded onto the freeway where it sped up to 90 miles per hour. It took the very next exit off the freeway and went to a gas station. The truck containing the witnesses also pulled into the gas station. Defendant got out of the car holding her cell phone and asked the witnesses why they were following her. One of the witnesses replied: "You know why I'm following you. The cops are on their way." Defendant then "started playing with" her phone. The police arrived less than a minute later and arrested defendant.

*People v. Daigle*, No. H035402; 2011 WL 2638740, *1-2 (Cal. Ct. App. Jul. 6, 2011) (unpublished).

**STANDARD OF REVIEW**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in

---

[1]The Court of Appeal's summary constitutes a factual finding that is presumed correct under 28 U.S.C. § 2254(e)(1). *See Hernandez v. Small*, 282 F.3d 1132, 1135 n.1 (9th Cir. 2002).

1  a decision that was contrary to, or involved an unreasonable application of, clearly established

2  Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision

3  that was based on an unreasonable determination of the facts in light of the evidence presented in the

4  State court proceeding." 28 U.S.C. § 2254(d).

5      A state court decision is "contrary to" Supreme Court authority under the first clause of

6  Section 2254(d)(1) only if "the state court arrives at a conclusion opposite to that reached by [the

7  Supreme] Court on a question of law or if the state court decides a case differently than [the

8  Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at

9  412-13. A state court decision is an "unreasonable application of" Supreme Court authority under the

10 second clause of Section 2254(d)(1), if it correctly identifies the governing legal principle from the

11 Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's

12 case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that

13 court concludes in its independent judgment that the relevant state-court decision applied clearly

14 established federal law erroneously or incorrectly." *Id.* at 411. Federal habeas relief is available only

15 if the state court's application of federal law is "so erroneous that 'there is no possibility fairminded

16 jurists could disagree that the state court's decision conflicts with this Court's precedents.'" *Nevada v.*

17 *Jackson*, __ U.S. __, 133 S. Ct. 1990, 1992 (2013) (citing *Harrington v. Richter*, __ U.S. __, 131 S.

18 Ct. 770, 786 (2011)).

19      Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's

20 jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the United

21 States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the

22 time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

23      When there is no reasoned opinion from the highest state court to consider the petitioner's

24 claims, the court looks to the last reasoned opinion of the highest court to analyze whether the state

25 judgment was erroneous under the standard of § 2254(d). *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06

26 (1991). In the present case, the California Court of Appeal is the highest court that addressed

27 Petitioner's claims in a reasoned opinion and it is that decision that the Court reviews.

28

**United States District Court**
For the Northern District of California

**DISCUSSION**

Petitioner asserts that the evidence submitted to the jury was insufficient to show that she had knowledge of the robbery, to show that she actively participated in the robbery or to convict her beyond a reasonable doubt.

**I. Federal Authority**

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of her state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, *see Jackson v. Virginia*, 443 U.S. 307, 321 (1979), which, if proven, entitles her to federal habeas relief, *see id.* at 324.

"*Jackson* claims face a high bar in federal habeas proceedings . . ." *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam) (finding that the 3rd Circuit "unduly impinged on the jury's role as factfinder" and failed to apply the deferential standard of *Jackson* when it engaged in "fine-grained factual parsing" to find that the evidence was insufficient to support petitioner's conviction). A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt; rather it "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992), *cert. denied*, 510 U.S. 843 (1993) (quoting *Jackson*, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, has there been a due process violation. *Jackson*, 443 U.S. at 324; *Payne*, 982 F.2d at 338.

After AEDPA, a federal habeas court applies the standards of *Jackson* with an additional layer of deference. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). A federal habeas court must ask whether the operative state court decision reflected an unreasonable application of *Jackson* to the facts of the case. *Coleman*, 132 S. Ct. at 2062; *Juan H.*, 408 F.3d at 1275 (quoting 28 U.S.C.

1  2254(d)).[2]  To grant relief, a federal habeas court must conclude that "the state court's determination

2  that a rational jury could have found that there was sufficient evidence of guilt, i.e., that each required

3  element was proven beyond a reasonable doubt, was objectively unreasonable." *Boyer v. Belleque*,

4  659 F.3d 957, 964-965 (9th Cir. 2011).

5      In adjudicating sufficiency claims, the constitutional standard is applied with reference to the

6  substantive elements of the criminal offense as defined by state law.  *Jackson*, 443 U.S. at 324 n.16.

7  **II. Analysis**

8      The California Court of Appeal's rejection of Petitioner's insufficient evidence claim was not

9  unreasonable under AEDPA.  The state court first set forth the appropriate standard for reviewing a

10  claim of evidentiary sufficiency.  Then the court set out the requirements, under California law, for a

11  finding of guilt by aiding and abetting as follows:

12      A person aids and abets the commission of a crime when he or she, (I) with knowledge of the
        unlawful purpose of the perpetrator, (ii) and with the intent or purpose of committing,

13      facilitating or encouraging commission of the crime, (iii) by act or advice, aids, promotes,
        encourages or instigates the commission of the crime."  *(People v. Cooper* (1991) 53 Cal. 3d

14      1158, 1164.)  "For purposes of determining liability as an aider and abettor, the commission
        of robbery continues as long as the loot is being carried away to a place of temporary safety."

15      (*Cooper*, at 1169–1170.)  "[A] getaway driver must form the intent to facilitate or encourage
        commission of the robbery *prior to or during the carrying away of the loot to a place of*

16      *temporary safety*." (*Cooper*, at 1165).

17  *Daigle*, 2011 WL 2638740, at *1 (emphasis in original).

18      The Court of Appeal then discussed how the evidence showed Petitioner's active participation

19  as an aider and abettor in the robbery.

20      Defendant contends that "there is simply nothing to show that appellant is culpable for
        robbery as an aider and abettor."  She claims that there was no evidence "that she had

21      knowledge that the two men planned to rob the Burger King," but "only evidence that she
        gave the men a ride, and that at some point they either asked to get out of the car or she told

22      them to get out of the car."  Her contention ignores both the applicable law and the evidence.
        FN5

23
            FN5  Defendant also relies on the fact that the two witnesses gave different

24          descriptions of the events. This argument ignores the applicable standard of review,

25

26      [2] Prior to *Juan H.*, the Ninth Circuit had expressly left open the question of whether
    28 U.S.C. 2254(d) requires an additional degree of deference to a state court's resolution of

27  sufficiency of the evidence claims.  *See Chein v. Shumsky*, 373 F.3d 978, 982-83 (9th Cir.2004) (en
    banc).  In *Juan H.*, the court concluded that "the Supreme Court's analysis in *Williams* compels the

28  conclusion that the state court's application of the *Jackson* standard must be '"objectively
    unreasonable.'"  *Juan H.*, 408 F.3d at 1275 n.13.

United States District Court

For the Northern District of California

which requires us to resolve all conflicts in the evidence in favor of the jury's verdicts.

The prosecution was not required to prove that defendant had advance knowledge that the two men "planned to rob the Burger King." The prosecution could establish defendant's liability as an aider and abettor by proving that defendant knew that the men had robbed the Burger King and establishing that she intended to and did aid the robbers in asporting the loot away. (*Cooper*, 53 Cal. 3d at 1165.)

Nor was it true that the evidence established "only" that defendant "gave the men a ride." Defendant was in her car, in a red zone, with the lights off, near the Burger King during the robbery. The fact that defendant was sitting in her car, at night, with the lights off, in a red zone reflects that she was waiting for the two men to come out of the Burger King. The two robbers ran directly from the Burger King to her car. This too reflects that the men and defendant had prearranged that she would act as their getaway driver. The fact that defendant immediately turned on the cars lights and drove away when the men entered her car confirmed that her role as the getaway driver was preplanned.

Defendant could not have been unaware that the two men had just committed a robbery when they reached her car. The two men were running, wearing masks and gloves, and carrying a white bag. It strains credulity to suggest that defendant failed to appreciate the significance of these circumstances. The jury could reasonably infer that defendant would have understood that the two men had just committed a robbery and that the white bag contained the loot from the robbery. By acting as the prearranged getaway driver for two men who had obviously just committed a robbery and were plainly escaping with the loot, defendant satisfied the requisite elements for aider and abettor liability.

Her subsequent conduct further demonstrated that she and the two robbers shared a unity of purpose. She drove quickly away from the Burger King, dropped one man off at one location, made a u-turn, ran a stop light, and then dropped the other man off at a different location. Her intent to aid the men in escaping with the loot could not have been more manifest. In addition, apparently aware that she was being followed, she got on the freeway, drove at an excessive speed, but then got off at the first exit. When she confronted the two witnesses, she expressed no surprise that the police were on their way. This was the conduct of a person who knew that she had facilitated the men's escape from the scene of the robbery.

While the evidence against defendant was necessarily circumstantial, it was fully sufficient to satisfy the elements of aider and abettor liability for the robbery counts. The jury's verdicts are supported by substantial evidence.

*Daigle*, 2011 WL 2638740, at *2-3.

Despite Petitioner's assertion that no evidence suggested that she had knowledge of the robbery or that she actively participated in it, the Court of Appeal's conclusion to the contrary was reasonable. As emphasized by the Court of Appeal, the commission of a robbery continues as long as the loot is being carried away to a place of safety. Under this standard, the fact that Petitioner did not enter the Burger King and participate in taking the loot but only drove the men away from the store does not absolve her from participating in the crime. Further, under the aiding and abetting statute, the prosecutor need only show that Petitioner formed the intent to facilitate or encourage the robbery

6

United States District Court

For the Northern District of California

1   during the carrying away of the loot to a place of temporary safety.  However, not only did the

2   evidence show that Petitioner facilitated the carrying away of the loot to a place of safety, it also

3   showed that she must have been waiting at the Burger King for the specific purpose of helping the

4   robbers make their getaway.

5          The evidence showed that, during the robbery, Petitioner was in her car, backed into a spot in

6   a red zone, with the lights off, near an apartment complex that was near the Burger King.  Reporter's

7   Transcript (RT) at 732, 737-38.  There was no evidence that Petitioner knew anyone in the apartment

8   complex.  The lack of evidence that Petitioner knew anyone in the apartment complex and the

9   position of her car that allowed her quickly to drive away strongly suggest that she was not there to

10  visit anyone, but to act as a getaway driver for the robbers.  After the robbery, the two robbers ran

11  from the Burger King directly to Petitioner's car and got in the car still wearing their masks and

12  gloves.  Petitioner then immediately turned on the car's headlights and drove away.  This evidence

13  strongly suggests that Petitioner was aware that the two men had just committed a robbery when they

14  entered her car and, thus, there was a prearranged plan for Petitioner to wait for the robbers and to

15  drive them away to a place of safety.  Based on this evidence, a jury could find that, not only did

16  Petitioner form the intent to aid the robbers after they entered her vehicle, but that her intent to act as

17  the robbers' getaway driver was formed in advance of the actual crime.

18         Petitioner's behavior after she drove away substantiated that she was the designated getaway

19  driver.  Petitioner drove quickly away from the Burger King, dropped one man off at one location,

20  made a u-turn, ran a stop light and then dropped the second man off at a different location.  RT at

21  659. Furthermore, once she dropped off the two men, Petitioner attempted to escape pursuit by the

22  two witnesses who followed her by getting on the freeway and driving at an excessive speed.  RT at

23  662.

24         During closing argument, defense counsel argued that the robbers may have lived in the

25  apartment complex, made an innocent arrangement to meet Petitioner outside and, while she was

26  driving away, told her that they just robbed the Burger King.  RT at 832-33.  Counsel also speculated

27  that Petitioner did not know the two robbers at all and that they flagged down her car or jumped in

28  front of her car as she was driving down the street.  RT at 836.  However, when, at the Chevron

1  station, Petitioner spoke to the witnesses who followed her, she only asked why they had been

2  following her and said nothing about being car jacked, tricked or coerced by the robbers into driving

3  them away.   RT at 753.

4         Based on the record, and viewing the evidence in favor of the prosecution, as must be done on

5  federal habeas corpus review, there was an abundance of evidence for the jury to reject defense

6  counsel's unsupported speculations in favor of the testimony of the two witnesses who observed

7  Petitioner waiting for the robbers and then fleeing the scene with the robbers, dropping each off and

8  then attempting to evade pursuit.

9         Thus, it was objectively reasonable for the Court of Appeal to determine that a rational jury

10 could have found that each required element of aiding and abetting liability was proven beyond a

11 reasonable doubt.  *See Boyer*, 659 F.3d at 964-65.

**CONCLUSION**

13        For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  Petitioner has

14 failed to make a substantial showing that her claim amounted to a denial of her constitutional rights

15 or demonstrate that a reasonable jurist would find this Court's denial of her claim debatable or wrong.

16 *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Consequently, no certificate of appealability is

17 warranted in this case.

18        The clerk shall enter judgment and close the file.

19        IT IS SO ORDERED.

21 DATED:  October 25, 2013

JEFFREY S. WHITE
United States District Judge

27        UNITED STATES DISTRICT COURT

28                        FOR THE

**United States District Court**
For the Northern District of California

NORTHERN DISTRICT OF CALIFORNIA

ELLA MAE DAIGLE,

        Plaintiff,

  v.

WALTER MILLER et al,

        Defendant.

_____/

Case Number: CV12-04270 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 25, 2013, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Ella Mae Michele Daigle
WA3794
P.O. Box 8100
Corona, CA 92878-8100

Dated: October 25, 2013

*Jennifer Ottolini*

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk